IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


| | | | |
|---|---|---|---|
| GLUE WILKINS, | ) | | |
| Plaintiff | ) | | |
| | ) | | |
| vs. | ) | Civil Action No. 06-203J | |
| | ) | Judge Kim R. Gibson/ | |
| GERALD ROZUM, Superintendent; | ) | Magistrate Judge Amy Reynolds Hay | |
| JEFFREY A. BEARD, PH.D., Secretary of | ) | | |
| Corrections; REBECCA GAUNTNER, | ) | | |
| Library Asst., SCI Somerset; DANIEL J. | ) | | |
| GEHLMAN, Major, SCI Somerset; SILVIA | ) | | |
| GIBSON, Deputy Superintendent, SCI | ) | | |
| Somerset; TERRY DEWITT, Office of | ) | | |
| Professional Responsibility, PA Department | ) | | |
| of Corrections; DEPARTMENT OF | ) | | |
| CORRECTIONS, | ) | | |
| Defendants | ) | Re Dkt. [31] | |

REPORT AND RECOMMENDATION

I. RECOMMENDATION

It is respectfully recommended that Defendants' motion for summary judgment, Dkt. [31]

be granted.

II. REPORT

Glue Wilkins, Inmate Number FP1629, a/k/a Allen Lee Wilkins, Sr. ("Plaintiff") is a state

prisoner who, at the time giving rise to this suit, was housed in the State Correctional Institution at

Somerset (SCI-Somerset) and is serving a sentence of twenty-four years for convictions of, inter

alia, Aggravated Assault, Robbery, Terroristic Threats and Unlawful Restraint.

He has brought this civil rights suit, alleging that he was denied access to the Courts and

retaliated against by the Defendants. In his complaint, he names the following Defendants:

Jeffrey Beard, Secretary of the Pennsylvania Department of Corrections ("DOC"); Gerald Rozum,

Superintendent of SCI-Somerset; Sylvia Gibson, Deputy Superintendent of SCI-Somerset; Rebecca Gauntner, Library Assistant at SCI-Somerset; Daniel Gehlman, Major at SCI-Somerset; Terry Dewitt, DOC Office of Professional Responsibility; and finally, DOC itself.

**Procedural History**

After Plaintiff was granted IFP status, it was discovered that he had three strikes and so, his IFP status was revoked. However, he paid the $350.00 filing fee and the case continued. The operative complaint is Dkt. [15]. As pointed out by the Defendants, it appears that the complaint as docketed by the Clerk's Office is out of order. Accordingly, the Defendants reassembled the complaint in what to the Court appears to be the correct order. That complaint may be found at Dkt. [33-3] at 17 to 32. After filing an answer to the complaint, Dkt. [24], Plaintiff filed a "response to the answer." Dkt. [26]. The Court issued a scheduling order that set discovery to conclude by August 17, 2007 and other deadlines. Dkt. [25]. Plaintiff filed his Narrative Written Statement. Dkt. [30]. Defendants filed a motion for summary judgment. Dkt. [31], a brief in support, Dkt. [32] and a Concise Statement of Material Facts, with evidentiary materials attached. Dkt. [33]. Plaintiff filed a Response to the Motion for Summary Judgment, Dkt. [37], his own Concise Statement of Material Facts, Dkt. [38], and his Response to the Defendants' Concise Statement of Material Facts. Dkt. [39]. Defendants filed their response to Plaintiff's Concise Statement of Material Facts. Dkt. [40]. Defendants filed a reply to Plaintiff's response to the Summary Judgment Motion. Dkt. [41] . Plaintiff filed a "response." Dkt. [42].

**Standard of Review - Summary Judgment**

Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will

bear the burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986). The moving

party bears the initial burden to show or point out why there is no genuine issue of material fact.

<u>Walters ex rel. Walters v. General Motors Corp.</u>, 209 F.Supp.2d 481, 484 (W.D. Pa. 2002). The

manner of carrying this initial burden varies depending on whether the moving party or the non-

moving party bears the burden of proof at trial with respect to the legal issue. <u>Fitzpatrick v. City</u>

<u>of Atlanta</u>, 2 F.3d 1112, 1115 (11th Cir. 1993)("The nature of this responsibility varies, however,

depending on whether the legal issues, as to which the facts in question pertain, are ones on which

the movant or the non-movant would bear the burden of proof at trial.").

    Instantly, the exhaustion of administrative remedies, one of the affirmative defenses raised

by the Moving Defendants, is an issue for which the Moving Defendants would bear the burden of

proof. <u>Ray v. Kertes</u>, 285 F.3d 287, 295 (3d Cir. 2002). Hence,

> [w]hen the moving party has the burden of proof at trial, that party must show
> affirmatively the absence of a genuine issue of material fact: it "must support its
> motion with credible evidence . . . that would entitle it to a directed verdict if not
> controverted at trial." [*Celotex*] at 331 (Brennan, J., dissenting); *see also Chanel,*
> *Inc.*, 931 F.2d at 1477. In other words, the moving party must show that, on all the
> essential elements of its case on which it bears the burden of proof at trial, no
> reasonable jury could find for the nonmoving party. *See id.* at 1477. If the moving
> party makes such an affirmative showing, it is entitled to summary judgment unless
> the nonmoving party, in response, "come[s] forward with significant, probative
> evidence demonstrating the existence of a triable issue of fact." *Id.*; *see also*
> Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting).

<u>U.S. v. Four Parcels of Real Property</u>, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).

> In contrast,

> [w]hen the nonmoving party has the burden of proof at trial, the moving party is
> not required to "support its motion with affidavits or other similar material
> negating the opponent's claim," *Celotex*, 477 U.S. at 323, in order to discharge this
> "initial responsibility." Instead, the moving party simply may "'show[ ]'-that is,
> point[ ] out to the district court -- that there is an absence of evidence to support

the nonmoving party's case." *Id*. at 324. Alternatively, the moving party may
support its motion for summary judgment with affirmative evidence demonstrating
that the nonmoving party will be unable to prove its case at trial. *Id.* at 331
(Brennan, J., dissenting). If the moving party shows the absence of a triable issue
of fact by either method, the burden on summary judgment shifts to the nonmoving
party, who must show that a genuine issue remains for trial. Fed.R.Civ.P. 56(e);
*Chanel, Inc. v. Italian Activewear, Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991). If the
nonmoving party fails to "make a sufficient showing on an essential element of her
case with respect to which she has the burden of proof," *Celotex*, 477 U.S. at 323,
the moving party is entitled to summary judgment.

Id., at 1437-38 (footnotes omitted). In either case, regardless of who bears the burden of proof at

trial, the moving party must show no genuine dispute over a material fact.

"The substantive law governing the dispute will determine which facts are material, and

only disputes over those facts that might affect the outcome of the suit under the governing law

will properly preclude the entry of summary judgment." DeHart v. Horn, 390 F.3d 262, 267 (3d

Cir. 2004)(internal quotations omitted). The evidence on summary judgment presents a genuine

issue of fact only if the evidence is such that a reasonable jury could return a verdict for the non-

moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). "Where the record taken as

a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no

genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587

(1986). The inquiry involves determining whether the evidence presents a sufficient disagreement

to require submission to a jury or whether it is so one-sided that one party must prevail as a matter

of law. Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990)(quoting Anderson, 477 U.S.

at 251-52). If a court, having reviewed the evidence with this standard in mind, concludes that

"the evidence is merely colorable . . . or is not significantly probative," then summary judgment

may be granted. Anderson, 477 U.S. at 249-50. In reviewing the summary judgment evidence,

the Court has no duty to search the record for triable issues; rather, it need rely only on those portions of the evidentiary record to which the nonmoving party directs its attention. Guarino v. Brookfield Township Trustees, 980 F.2d 399, 403 (6th Cir. 1992).

In deciding a motion for summary judgment, the judge's function is not to determine the truth of the matter, but rather to determine if there is a genuine issue for trial. Anderson, 477 U.S. at 249. In short, the summary judgment motion is an evidence testing device to see if there is sufficient evidence to support a party's position with respect to an issue for which that party bears the burden of proof at trial so as to justify holding a trial.

### Discussion

### 1. Res Judicata

Any claims against Defendant Rebecca Gauntner are barred by the doctrine of res judicata.[1] In his complaint, Plaintiff alleged that he "filed a civil complaint against MS. GAUNTNER on June 13th." Dkt. [33-3] at18, ¶ IV.3. Attached to the complaint was a copy of

---

[1] While the Moving Defendants did not seek summary judgment based upon the doctrine of res judicata, a District Court has the inherent authority to grant summary judgment sua sponte so long as the party opposing summary judgment has notice and an opportunity to be heard concerning the proposed basis for the sua sponte grant of summary judgment. Canell v. Bradshaw, 97 F.3d 1458, at *5 (Table, Text available in Westlaw) (9th Cir. 1996) (unpublished)("A district court may grant summary judgment to a non-moving party sua sponte so long as the other party has had an adequate opportunity to address the relevant issues."). See also Celotex, 477 U.S. at 326 ("Our conclusion is bolstered by the fact that district courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence."). This report and recommendation can serve as the necessary notice, and the opportunity to object provides Plaintiff with the opportunity to present any further evidence he may have with respect to this issue. Magouirk v. Phillips, 144 F.3d 348, 359 (5th Cir. 1998) ("Here, the Magistrate Judge's Memorandum and Recommendation placed Magouirk on notice that procedural default was a potentially dispositive issue with respect to three of his claims. Magouirk responded to the Magistrate Judge's sua sponte invocation of procedural default within the ten-day time period allowed for filing objections to the report. Thus, Magouirk was afforded both notice and a reasonable opportunity to oppose application of the procedural default doctrine in the district court."); Canady v. Baker, 142 F.3d 432 (Table), 1998 WL 123996, *1 (6th Cir. 1998)(same).

the civil complaint filed by Plaintiff against Ms. Gauntner in the Court of Common Pleas of Somerset County.  Dkt. [33-3] at 23 to 24.   Defendants provided a copy of the docket sheets for the Court of Common Pleas of Somerset County in Plaintiff's state court case.  Dkt. [33-2] at 33 to 34.  The opinion/order of that Court, disposing of Plaintiff's state action, was not attached to the complaint nor was it provided by the Defendants.  However, the Court obtained a copy from the Prothonotary's office. The memorandum order of the Somerset County Court of Common Pleas is attached to this Report as Attachment A.  In addition, the Court takes judicial notice of the fact that Plaintiff filed an appeal from the Somerset County Common Pleas Court's decision and that the Superior Court sua sponte dismissed the appeal as no issues had been preserved on appeal.[2]

As explained by the Court of Appeals for the Third Circuit, "the central purpose of the doctrine [of res judicata is] to require a plaintiff to present all claims arising out the same occurrence in a single suit."  Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Incorporated - Pension Fund v. Centra, 983 F.2d 495, 504 (3d Cir. 1992).

The State Court records, including the complaint filed in the Somerset County Court of Common Pleas, establishes that res judicata bars this present action, at least with respect to Defendant Gauntner.

Federal law directs us to look to Pennsylvania state law in determining the requirements

---

[2] The Superior Court's docket sheets are available at:

http://ujsportal.pacourts.us/PublicReporting/PublicReporting.aspx?rt=1&&ct=2&dkt=1263%20WDA%202006&ST=7/21/2008%2011:19:32%20AM

and effects of the doctrine of res judicata. Title 28 U.S.C. § 1738 requires that state court decisions be given the same preclusive effect in federal court that they would be given in the courts of the rendering state. <u>Delaware River Port Authority v. Fraternal Order of Police</u>, 290 F.3d 567, 573 (3d Cir. 2002); <u>Gregory v. Chehi</u>, 843 F.2d 111, 116 (3d Cir. 1988).

Pennsylvania adheres to the preclusive doctrine of res judicata. As explained by the Pennsylvania Supreme Court:

> Res judicata, or claim preclusion, prohibits parties involved in prior, concluded litigation from subsequently asserting claims in a later action that were raised, or could have been raised, in the previous adjudication. *R/S Financial Corporation v. Kovalchick*, 716 A.2d 1228, 1230 (Pa.1998). The doctrine of res judicata developed to shield parties from the burden of re-litigating a claim with the same parties, or a party in privity with an original litigant, and to protect the judiciary from the corresponding inefficiency and confusion that re-litigation of a claim would breed. <u>Id.</u>

<u>Wilkes ex rel. Mason v. Phoenix Home Life Mut. Ins. Co.</u> 902 A.2d 366, 376 (Pa. 2006).

Under Pennsylvania law, the doctrine of res judicata involves the analysis of four prongs: "1) Identity in the thing sued upon; 2) Identity of the cause of action; 3) Identity of persons and parties to the action; and, 4) Identity of the quality or capacity of the parties suing or sued[.]" <u>Stevenson v. Silverman</u>, 208 A.2d 786, 787-88 (Pa. 1965); <u>Wexler v. Citibank</u>, No. CIV.A. 94-4172, 1994 WL 580191 (E.D.Pa. Oct. 21, 1994). While these four prongs are to be analyzed, the Courts of Pennsylvania have cautioned against giving them a too literal interpretation. <u>See</u>, <u>e.g.</u>, <u>Radakovich v. Radakovich</u>, 846 A.2d 709, 715 (Pa. Super. 2004)("The purposes behind the doctrine, which bars the re-litigation of issues that either were raised or could have been raised in the prior proceeding, are to conserve limited judicial resources, establish certainty and respect for court judgments . . . . In keeping with these purposes, the doctrine must be liberally construed and

applied without technical restriction.").  In addition, the law of res judicata is at best confused and

confusing.  See, e.g., In re Laubach, 77 B.R. 483, 485 (E.D. Pa. 1987)("Our research reveals that

the issue of when res judicata . . . is to be applied is a very murky area, largely because much of

the caselaw is inconsistent, even within our own Circuit.").  What was said by the Court in

Laubach is equally true today.  Hence, we look to the purpose of the doctrine of res judicata as our

guide post in resolving this case.  In accord with the purpose of the doctrine, the court considers

the four prongs.

### a. Identity of thing sued upon

The first prong described as "identity of the thing sued upon" or "identity of subject

matter"[3] is met here as the "thing sued upon," or "the subject matter sued for" in the present

context, can only mean the actions and/or inactions of defendant Gauntner on May 20, 2006,

which constitute the operative facts of both the state lawsuit and the present federal lawsuit, an

event that is the basis of both suits.  See, e.g., Gregory, 843 F.2d at 116-117 ("Isolating the alleged

wrongful act is critical to the first requirement [of res judicata] -identity of subject matter. In this

case, a single event, the November 1, 1985 discharge, gave rise to both state and federal actions.

Because that same occurrence underlies both suits, the first prerequisite of claim preclusion is

met."); O'Brien v. Valley Forge Specialized Educational, No. CIV.A. 03-CV-3984, 2004 WL

2316425, at *8 (E.D. Pa. Oct. 13, 2004)("When the 'same occurrence underlies both suits,' this

requirement [of identity of the thing sued upon] is met"), aff'd, 173 Fed.Appx. 977 (3d Cir. 2006);

Jett v. Beech Interplex, Inc., No. CIV.A.02-9131, 2004 WL 1588230, at *3 (E.D. Pa. July 15,

---

[3] In re Estate of Tower, 343 A.2d 671, 674 (Pa. 1975)(describing first prong as "identity of the
thing or subject matter sued for").

2004)("The first factor for this Court to consider is the similarity of the thing sued upon in both Jett I and Jett II. In this case, the operative facts and the subject matter of this action are identical to the prior State Court proceedings. . . . Thus, this Court concludes that the first element of the res judicata doctrine is satisfied.")(citations omitted).  <u>Accord</u> <u>Regscan, Inc. v. Brewer</u>,  No. CIV.A.04-6043, 2006 WL 401852, *7 (E.D. Pa. Feb. 17, 2006)("in comparing the "thing sued upon" in the state and federal actions, the Court concludes that based on all of the above, the operative facts and the subject matter are closely aligned, and the first element of the res judicata doctrine is satisfied.").  All of the preceding federal cases cited immediately herein, addressing the "identity of thing sued upon," were construing the Pennsylvania state law of res judicata.

### b.  <u>Identity of Cause of Action</u>

The next prong is the identity of the cause of action.  In explaining the identity of the cause of action, the Court of Appeals for the Third Circuit, applying res judicata to a prior Pennsylvania State Court decision, as we are now, held that "res judicata generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims."  <u>Davis v. United States Steel Supply</u>, 688 F.2d 166, 171 (3d Cir.1982).  <u>See also</u> <u>Greenberg v Potomac Health Sys.</u> 869 F.Supp. 328, 331 (E.D.Pa. 1994)("Whether a cause of action is the same depends on the 'essential similarity of the underlying events,' rather than on the specific legal theories invoked.'").  Here, there can be no doubt that the underlying events ultimately giving rise to both the state court legal theory and the present Section 1983 legal theory are the actions of Defendant Gauntner in denying Plaintiff access to the library on May 20, 2006 and then in allegedly lying about there being no space in the library. Hence, this prong is satisfied.

### c.  <u>Identity of Parties</u>

The next prong is the identity of persons and parties to the action. Here, there can be no dispute that there is an identity of the parties, at least with respect to Defendant Gauntner and Plaintiff.[4]

### d. **Identity of Capacities**

The next prong is identity of the capacity of the parties. It is questionable that this remains a viable prong under Pennsylvania law. For example, in <u>Mintz v. Carlton House Partners, Ltd.</u>, 595 A.2d 1240 (Pa.Super. 1991), the defendants therein raised the defense of res judicata, and the plaintiffs, the Mintzes, argued against the application of the doctrine of res judicata because they contended the capacity of Carlton House was different in the two proceedings. The court assumed this to be true but then went on to hold that

> Assuming, arguendo, that these assertions have merit, they do not affect the applicability of the doctrine of res judicata.
> The rule [of res judicata] should not be defeated by minor differences of form, parties, or allegations, when these are contrived only to obscure the real purpose, a second trial on the same cause between the same parties. The thing which the court will consider is whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties actually had an opportunity to appear and assert their rights. If this be the fact, then the matter ought not be litigated again, nor should the parties, by a shuffling of plaintiffs on

---

[4] In applying this prong, the Pennsylvania state courts have made clear that res judicata applies not only to the parties in the prior litigation but also to those in privity with the parties of the prior litigation. <u>See</u>, <u>e.g.</u>, <u>Day v. Volkswagenwerk Aktiengescellschaft</u>, 464 A.2d 1313, 1317 (Pa. Super. 1983). While it is possible that the Defendants named in the present Section 1983 federal action are in privity with Defendant Gauntner, it does not appear that Plaintiff could have brought his state suit against these remaining defendants based on the facts alleged in the operative complaint because the Somerset Court of Common Pleas docket shows that that Court sua sponte dismissed the action on June 13, 2006, the very same date that the action was filed. Dkt. [33-2] at 33. However, the alleged violations of Plaintiff's rights by the Defendants other than Defendant Gauntner, appear to have taken place on or after June 13, 2006. <u>See</u>, <u>e.g.</u>, Dkt. [33-3] at 19, ¶ 9 (regarding the beginning of the alleged retaliation claims which is alleged to have begun on July 1, 2006); Dkt. [33-3] at 30 (Superintendent Rozum's response to Plaintiff's grievance appeal, dated June 13, 2006). With respect to some of Plaintiff's complaints concerning Deputy Superintendent Gibson, it is simply not clear when Plaintiff allegedly informed Gibson of his allegations against Defendant Gauntner and the events of May 20, 2006.

the record, or by change in the character of the relief sought, be permitted to nullify the rule.

Id. at 1247 (emphasis deleted).

Instantly, there is no indication that the capacity in which Plaintiff sued Ms. Gauntner in the State Court was other than her individual capacity, which appears to be the capacity in which she is being sued here in federal court. However, even if the capacities are not exactly identical, the Court is persuaded by the reasoning of the Superior Court in Mintz v. Carlton House Partners, Ltd., and finds it controlling herein. Hence, this prong is met as well. Hochman v. Mortgage Fin. Corp., 137 A. 252, 253 (Pa. 1927)("The rule [of res judicata] should not be defeated by minor differences of form, parties or allegations, when these are contrived only to obscure the real purpose,--a second trial on the same cause between the same parties."); Baroutis v. Gregory, 35 A.2d 559, 561 (Pa. Super. 1944)("The Supreme Court, however, has said that the doctrine of res judicata must not be construed too rigidly and restricted by technical requirements."). Cf. Bruszewski v. U.S., 181 F.2d 419, 422 (3d Cir. 1950)("where, as in this case, res judicata is invoked against a plaintiff who has twice asserted essentially the same claim against different defendants, courts have, as indicated in the cases above cited, enlarged the area of res judicata beyond any definable categories of privity between the defendants. Certainly the cases already cited show that the moving party has been bound by prior adjudication against him in situations where the relation between successive defendants was no closer or more significant than that between the United States and Isthmian Steamship Company here. We are in accord with this development of the law away from formalism which impedes the achievement of fair and desirable results.")(footnote omitted).

### 2. Failure to Exhaust

As an alternative rationale, the Court relies upon Plaintiff's failure to exhaust. The Defendants point out that there is no genuine material factual dispute over Plaintiff's failure to exhaust his administrative remedies. We agree.

The Prison Litigation Reform Act ("PLRA") requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). There is no dispute that this provision applies herein.

There is also no dispute that the available administrative remedy for Plaintiff is found in DC-ADM 804. Dkt. [33-2] at 8 to 25. That DOC policy sets up a three stage administrative remedy with an initial grievance filed to the grievance officer of the individual prison. If the response, called an "Initial Review Response," does not satisfy the prisoner, then the prisoner must appeal to the Superintendent/ Manager of the prison facility. If the Superintendent's response does not satisfy the prisoner, then the prisoner must appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA), who would issue a final decision. This is the last step in the process.

The Moving Defendants point to Grievance number 152642, Dkt. [33-2] at 26 to 31, and note that although Plaintiff filed all three steps, his grievance related solely to his being denied access to the library by Defendant Gauntner and therefore he procedurally defaulted any claims of retaliation, harassment, denial of food, etc. The Defendants also supply an affidavit from Keri Moore, an Administrative Officer II in the Grievance Review Office, who is responsible for

reviewing grievance records, which are kept in the ordinary course of business. She attested that Plaintiff did not properly exhaust his administrative remedies. Dkt. [33-2] at 5 to 6. This evidence was sufficient to meet their initial burden under summary judgment. Furthermore, Plaintiff failed to counter this evidence with evidence of his own that he actually did exhaust these retaliation claims. Hence, the Court agrees and so, Plaintiff's retaliation claims should be dismissed for failure to exhaust. Abdul-Muhammad v. Kempker, 486 F.3d 444, 445 (8th Cir. 2007) ("a prisoner who files a complaint in federal court asserting multiple claims against multiple prison officials based on multiple prison grievances must have exhausted each claim against each defendant in at least one of the grievances."); Clarenson v. Owens, 172 Fed.Appx. 816, 818 (10th Cir. 2006)("The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), requires prisoners to exhaust all administrative remedies as to each claim before filing a § 1983 action in district court."); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002 ("Bennett was also directed to file documentary proof that he had exhausted each claim by having presented it in a prison appeal to the third and final level of review."); Smith v. Shelby County, 34 Fed.Appx. 188, 190 (6th Cir. 2002)("He has clearly not pleaded his claims with specificity showing that each claim has been exhausted by attaching a copy of the applicable administrative dispositions . . . .").

Defendants also point out that Grievance No. 152642 only mentioned two of the defendants whom Plaintiff names in the present lawsuit, namely Gauntner and Rozum. The general rule is that in order to properly exhaust, a prisoner must name in the initial grievance persons whom the prisoner has a complaint against and whom he eventually wishes to sue. Spruill v. Gillis, 372 F.3d 218, 234 (3d Cir. 2004). Here, Plaintiff did not name any of the Defendants, except Gauntner and Rozum and so he has procedurally defaulted his claims against

those other defendants. See, e.g., Spruill v. Gillis, 372 F.3d at 234; Williams v. Pennsylvania,

Dep't of Corrections, 146 Fed.Appx. 554, 557 (3d Cir.2005) ("his [i.e., the prisoner's] failure to

identify defendants Herbert, Street, or Smith in either of his two grievances, means that he failed

to exhaust his administrative remedies in accordance with Pennsylvania's grievance process and

the PLRA."); Buehl v. Beard, Civ. A. No. 03-1313, 2007 WL 1830616 (W.D.Pa. June 25,

2007). [5]

Plaintiff also does offer some general argument that he "was intimidated and threatened

while serving time in the RHU because of misinformation and lies spread throughout SCI

Somerset by Defendant REBECCA GAUNTNER." Dkt. [39] at 2, ¶ 12. However, argument in

opposition to a summary judgment motion does not qualify as evidence for purposes of summary

judgment. Liszewski v. Moyer Packing Co., 252 Fed.Appx. 449, 450 (3d Cir. 2007) ("legal

arguments in briefs are not evidence)(citing Jersey Cent. Power & Light Co. v. Lacey Twp., 772

F.2d 1103, 1109-10 (3d Cir.1985) ); Baird v. Alameida, 407 F.Supp.2d 1134, 1139 (C.D. Cal.

2005)("It is well established that 'a party cannot manufacture a genuine issue of material fact

merely by making assertions in its legal memoranda."). Moreover, Plaintiff fails to explain why,

if he were so intimidated, after being placed in the RHU, he nonetheless was able to file his

_____

[5] For the reasons stated in Buehl, the Supreme Court decision in Jones v. Bock, __ U.S. __, 127 S.Ct. 910 (2007), which held that the Michigan Department of Corrections rules, governing inmate grievances, did not require that the prisoner name individuals whom he eventually sued, is distinguishable from the present case because the Third Circuit Court of Appeals already has held in Spruill v. Gillis, that the Pennsylvania Department of Corrections rules, governing inmate grievances, does require such . The Jones court specifically contemplated that this would be the case, i.e., various states' rules would yield various outcomes. Jones, 127 S.Ct. at 923 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. As the MDOC's procedures make no mention of naming particular officials, the Sixth Circuit's rule imposing such a prerequisite to proper exhaustion is unwarranted.").

appeals of his misconduct, alleging retaliation at least as against Defendant Gauntner. See Dkt.

[33-3] at 78 ("'Retaliation for me filing a grievance is against DOC policy.").[6]

Nor has Plaintiff otherwise established a factual dispute with respect to whether he

exhausted. Accordingly, all retaliation claims should be dismissed due to being procedurally

defaulted. All claims against all defendants other than Defendants Gauntner and Rozum, should

be dismissed as procedurally defaulted for failing to name them in relevant grievance, i.e., No.

152642.

### 3. Access to Courts Claim

As an alternative, Plaintiff's access to courts claim should be dismissed because he failed

to identify any suit that was harmed because of the Defendants' actions. Plaintiff claims that he

was denied meaningful access to courts while he was confined in administrative custody. The

court finds the case of <u>Christopher v. Harbury</u>, 536 U.S. 403 (2002) to require dismissal of this

claim.

In <u>Christopher</u>, a non-citizen husband of an American wife was detained in a foreign

country by CIA-employed foreign army officers who eventually killed him. Prior to his death, the

wife had tried to obtain information about her husband; however, the State Department and other

governmental officials stated to her that they would investigate. Nevertheless, these governmental

officials kept information from her and made misrepresentations that she alleged prevented her

---

[6] In that same misconduct appeal, Plaintiff specifically stated that "I do not want to be transferred" Dkt. 33-3 at 7. This is in stark contrast to what he alleges he told Superintendent Rozum and Secretary Beard after he received the misconduct from Defendant Gauntner. In his complaint, Plaintiff alleged that after he received the misconduct charge from Defendant Gauntner, "I informed MR. ROZUM and MR. BEARD that I should be removed from the institution because my life was in danger. NO ACTION TAKEN." Dkt. [33-3] at 19, ¶ 12.

from obtaining information that would have enabled her to file a suit to prevent her husband's death. She alleged that the officials' conduct interfered with her right of access to the courts. The District Court dismissed the claim. The Court of Appeals reversed and the Supreme Court, in turn, reversed the Appeals Court and emphasized that in order to plead an adequate denial of access to courts claim, the plaintiff must plead the existence of an injury, i.e., the loss of a non-frivolous lawsuit. Accordingly, the high Court reversed the Appeals Court and in effect, affirmed the District Court's order of dismissal for failure to state a claim.

The Supreme Court declared that the "very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong. . . . the right [of access claim] is ancillary to the underlying claim, without which the plaintiff cannot have suffered injury by being shut out of court." Christopher, 536 U.S. at 414-15. Therefore, "[i]t follows that the underlying cause of action . . . is an element that must be described in the complaint, just as much as the allegations must describe the official acts frustrating the claim." Id. at 415. In addition, the court explained that as part of the pleading requirement to demonstrate actual injury caused by the official actions, the plaintiff must plead that she has actually lost the opportunity to litigate that which she desired to litigate in the suit which was blocked by the official action. The Court explained that "the complaint must identify a remedy that may be awarded as recompense [for the blocked suit] but not otherwise available in some suit that may yet be brought." Id. In other words, if the claims in the blocked suit may yet be brought, there is no sense in litigating an access to courts claim because no actual injury was suffered if the claims in the blocked suit could still be brought. As the Supreme Court put it so succinctly, "[t]here is, after all, no point in spending time and money to establish the facts

16

constituting denial of access when a plaintiff would end up just as well off after litigating a

simpler case without the denial of access element." Id.   With this understanding the Court then

went on to hold that

> Like any other element of an access claim, the underlying cause of action
> and its lost remedy must be addressed by allegations in the complaint sufficient to
> give fair notice to a defendant. Although we have no reason here to try to describe
> pleading standards for the entire spectrum of access claims, this is the place to
> address a particular risk inherent in backward-looking claims [i.e., claims, such as
> the one Plaintiff brings herein, that past behavior of officials have caused a party to
> lose access to courts in the past]. Characteristically, the action underlying this sort
> of access claim will not be tried independently, a fact that enhances the natural
> temptation on the part of plaintiffs to claim too much, by alleging more than might
> be shown in a full trial focused solely on the details of the predicate action.
>
> Hence the need for care in requiring that the predicate claim be described
> well enough to apply the "nonfrivolous" test and to show that the "arguable" nature
> of the underlying claim is more than hope.  And because these backward-looking
> cases are brought to get relief unobtainable in other suits, the remedy sought must
> itself be identified to hedge against the risk that an access claim be tried all the way
> through, only to find that the court can award no remedy that the plaintiff could not
> have been awarded on a presently existing claim.

Id., at 416 (footnotes and citations omitted).

Plaintiff's complaint suffers two flaws under Christopher.  First, Plaintiff has failed to

sufficiently identify with specificity any suit which he sought to bring or was litigating while in

administrative custody was non-frivolous.  Secondly, he has failed to identify the remedy which

he could not be awarded on a presently filed suit or that any such suit then pending was actually

interfered with.

To the extent that Plaintiff intended to say that he was denied access to courts to litigate

his criminal conviction via a PCRA petition, Plaintiff himself admits that he had a lawyer

appointed to represent him in those PCRA proceedings, Dkt. [33-3] at 19, ¶ 14 and this dooms his

access to courts claim.  See, e.g., Schrier v. Halford, 60 F.3d 1309, 1313-1314 (8th Cir. 1995)(having appointed counsel is one way in which state can shoulder its burden of assuring access to the courts); Love v. Summit County, 776 F.2d 908, 914 (10th Cir. 1985) (state is entitled to choose whether it will meet its obligation to provide access to the courts by providing an adequate law library or by providing legal assistance in the form of an attorney); Sanders v. Rockland County Correctional Facility, No. 94 Civ. 3691, 1995 WL 479445 at *2 (S.D.N.Y. Aug. 14, 1995) ("By the appointment of counsel, plaintiff was afforded meaningful access to the courts in his trial."); Rogers v. Thomas,  No. 94-4692, 1995 WL 70548 at *2 (E.D.Pa. Feb. 17, 1995), aff'd, 65 F.3d 165 (3d Cir. 1995) (Table) (notwithstanding that legal papers were taken from plaintiff inmate by prison officials, "plaintiff was not denied access to the courts because he was represented by court-appointed counsel, during the entire pendency of the appeal to which the legal papers related.  Thus, plaintiff was actually provided with, not denied, legal assistance."); Williams v. Vaughn, No. 90-5617, 1991 WL 34429 at *4 (E.D.Pa. March 12, 1991) ("Thus, [plaintiff-inmate] Williams was not actually injured by any inability to gain access to the law library since he ultimately obtained representation.").   This rule of law makes eminent sense in light of Bounds v. Smith, 430 U.S. 817 (977), which provided that inmates be provided with access to the courts by "providing prisoners with adequate law libraries **or** adequate assistance from persons trained in the law."  Bounds, 430 U.S. at 828 (emphasis added).

This is true notwithstanding that Plaintiff complains that he was not able to call his newly appointed PCRA counsel.  Dkt. [33-3] at 19.   He fails to say when or how long this was the case, and he fails to show how or why this adversely affected any challenge to his conviction that he sought to bring.  Obviously, he eventually had contact with the counsel. He fails to state how any

delay in contacting the attorney caused any injury to his litigation as is required under Christopher. See, e.g., Norington v. Cox, No. 1:05-cv-1106, 2006 WL 2583707, at *3 (S.D.Ind. Sept. 7, 2006) ("*see also Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (a prisoner claiming he was denied access to the courts must ultimately prove he suffered an actual injury by showing that the defendant's acts hindered his ability to pursue a non-frivolous legal claim . . . .)" ).

Plaintiff also complains that he had two deadlines to meet in five civil cases which he apparently had ongoing in state court, see Dkt. [30] at 1, ¶ 1, at the time of the denial of access to the library, i.e., on or about May 20, 2006, id, at 2, ¶ 4. However, Plaintiff utterly fails to show that he missed those deadlines, or when he received notice of those deadlines, given the evidence of record that he had library access roughly 17 out of a total possible 19 times between May 13, 2006 and May 19, 2006 and that he was scheduled for six library sessions and provided even more than those six during the week of May 21, 2006 and May 27, 2006, Dkt. [33-2] at 28, or why, even without access on May 20, 2006, he could not simply have filed a motion for extension of time in which to meet the deadline if, in fact, denial of access to the library on May 20, 2006 actually impaired his ability to meet the deadline, something which he offers no proof of. Accordingly, the access to courts claim should be dismissed.

4. **Retaliation Claims**

Plaintiff claims that he was retaliated against "for filing civil rights claims against a prison official at SCI SOMERSET." Dkt. [33-3] at 18, ¶ III.2. The First Amendment protects a citizen's right to petition the government. See Cheminor Drugs, Ltd. v. Ethyl Corp., 168 F.3d 119, 130 (3d Cir. 1999).

Retaliation for the exercise of a constitutionally protected right is itself a violation of rights

secured by the Constitution, which is actionable under section 1983. <u>White v. Napoleon</u>, 897 F.2d 103, 111 - 112 (3d Cir. 1990); <u>Milhouse v. Carlson</u>, 652 F.2d 371, 373-74 (3d Cir. 1981) (retaliation for exercising right to petition for redress of grievances states a cause of action for damages arising under the constitution). <u>Accord</u> <u>Anderson v. Davila</u>, 125 F.3d 148, 161 (3d Cir. 1997) ("[A]n otherwise legitimate and constitutional government act can become unconstitutional when an individual demonstrates that it was undertaken in retaliation for his exercise of First Amendment speech.") (<u>citing</u>, <u>Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. 274 (1977)).

In order to prevail on a retaliation claim, a plaintiff must establish:  (1) that he engaged in constitutionally protected activity; (2) that he was subject to adverse actions by a state actor; and (3) the constitutionally protected activity was a substantial motivating factor in the state actor's decision to take adverse action. <u>Anderson v. Davila</u>, 125 F.3d at 161 (<u>citing</u> <u>Mt. Health City Sch. Dist. Bd. of Educ. v. Doyle</u>). If the plaintiff proves these elements, the burden shifts to the state actor to prove that it would have taken the same action even without the unconstitutional factors. <u>Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. at 287.  In the prison context, the state actor may rebut a plaintiff's claim by showing that their actions were motivated by legitimate penological objectives. <u>Pratt v. Rowland</u>, 65 F.3d 802 (9th Cir. 1995).

It is Plaintiff's burden to prove that the Defendants were motivated by retaliation against Plaintiff. <u>See</u> <u>Hannon v. Speck</u>, Civ. A. No. 87-3210, 1988 WL 131367, at *4 (E.D.Pa. Dec. 6, 1988) ("In bringing a §1983 action alleging such retaliation, an inmate faces a substantial burden in attempting to prove that the actual motivating factor ... was as he alleged.") (internal quotes and citation omitted), <u>aff'd</u>, 888 F.2d 1380 (3d Cir. 1989)(Table).  Even if a plaintiff successfully

alleges that retaliation was the substantial motivating factor, the plaintiff's claim can be defeated by "demonstrating that the same action would have been taken even in the absence of the protected conduct." Green v. Philadelphia Housing Authority, 105 F.3d 882, 885 (3d Cir. 1997).

To the extent that Plaintiff complains of actions taken pursuant to him being found guilty of a misconduct of threatening Defendant Gauntner and thereafter placed in the Restricted Housing Unit as a consequence, the alleged retaliation claim fails in the case of a finding of guilt in a misconduct hearing because this finding demonstrates that the Defendants possessed a legitimate penological interest in the filing of the misconduct charge, namely, to punish Plaintiff for violating prison disciplinary rules. The finding of guilt in the underlying misconduct charge satisfies the Defendants' burden of showing that they would have brought the misconduct charge even if Plaintiff had not engaged in protected activity. See Vercheres v. Wilkinson, 194 F.3d 1315 (6th Cir. 1999)(Table, Text in Westlaw)("Thus, Vercheres's retaliation claim was properly dismissed, as the finding that he was guilty of stalking satisfied the defendants' burden of showing that the guard would have charged him with a violation, even if Vercheres had not filed a grievance."); Hynes v. Squillace, 143 F.3d 653, 657 (2d Cir. 1998); Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994) (being found guilty of a prison rule violation based on some evidence "essentially checkmates [the] retaliation claim.").

To the extent that Plaintiff rests his retaliation claims on the fact that he was occasionally denied food, access to yard exercise and access to the law library, Dkt. [33-3] at 19, ¶ 19, Plaintiff fails to establish a causal connection between these actions, which were apparently taken by non parties, and any retaliatory animus, as is his burden.

What really seems to be at the heart of Plaintiff's complaint is that Defendant Gauntner

allegedly lied to him and to other state prison officials about the availability of library time on May 20, 2006, and that this violated state policies. Dkt. [26] at 3, ¶ 26; Dkt. [37] at 1 (the Defendants "have submitted numerous pleadings, answer to interrogatories, submissions, admission on file, affidavits and other declarations, HOWEVER, the Defense has never responded to first essential element in this matter – DID DEFENDANT REBECCA GAUNTNER LIE TO TWO (2) SUPERVISORY STAFF AT SCI SOMERSET? This issue is Crticality [sic] 1 in this matter."); id., at 2, ¶ 4 (The questions essential to this Honorable Court's truth seeking foundation in this matter is – DID DEFENDANT REBECCA GAUNTNER LIE TO TWO (2) SCI SOMERSET SUPERVISORY OFFICIALS? YES OR NO"). Even if the Defendants do not directly address whether Defendant Gauntner lied, Plaintiff has no constitutional right to have prison officials not lie to him or to others. Stubl v. Place, No. 2:07-CV-204, 2008 WL 1732948, at *2 (W.D.Mich. April 10, 2008)("However, Plaintiff has no constitutional or federal right to . . . not to be lied to by prison officials. Because Plaintiff's allegations do not rise to the level of a constitutional violation, the undersigned recommends dismissal of his complaint."); Davis v. Castleberry, 364 F.Supp.2d 319, 323 (W.D.N.Y., 2005) ("Burks-Bey v. Stevenson, 328 F.Supp.2d 928, 938 (N.D.Ind.2004) ('being lied to [in an inmate grievance proceeding] does not state a claim for the violation of a Constitutional right')"); Pippin v. Frank, No. 04-C-582-C, 2005 WL 1378725, at *11 (W.D.Wis., June 6, 2005)("Petitioner's allegation that respondent Blechl lied when he said that (1) petitioner had written a letter to the media and (2) he had interviewed everyone about the facts stated in petitioner's complaint is legally meritless because petitioner does not have an independent constitutional right not to have prison officials lie about him."). Hence, even if we were to assume that Defendant Gauntner lied to Plaintiff and/or to supervisors,

it is of no constitutional significance.

Nor does a mere violation of State policies state a cause of action under the Constitution. Elkin v. Fauver, 969 F.2d 48, 52 (3d Cir. 1992)("An alleged violation of state law, however, does not state a claim under section 1983.").  So, even if Ms. Gauntner lied to Plaintiff and to others and even if such "lies" violated State DOC policies, such would still fail to state a claim upon which relief could be granted.

5.  **DOC should be dismissed as a party defendant**

DOC is not "person" within the contemplation of Section 1983 so as to make it susceptible to suit thereunder.  Curti v. Everett, 489 F.2d 516, 521 (3d Cir. 1973).  Hence, the complaint must be dismissed as against DOC.  Alternatively, DOC is entitled to 11th Amendment immunity, which also requires dismissal of the suit against it.  Walker v. Beard, 244 Fed.Appx. 439, 440 (3d Cir. 2007).

III. CONCLUSION

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are permitted to file written objections by August 11, 2008 and responses are due seven (7) days thereafter in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation.  Failure to timely file objections may constitute waiver of any appellate rights.

Respectfully submitted,

/s/  *Amy Reynolds Hay*
United States Magistrate Judge

23

Dated: 25 July, 2008

cc:     The Honorable Kim R. Gibson
        United States District Judge

        Glue Wilkins
        FP-1629
        SCI Cresson
        P.O. Box A
        Cresson, PA 16699-0001

        All Counsel of Record via CM-ECF

ATTACHMENT